IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| WILLIAM JOSEPH WEBB, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 07-31-GMS |
| | ) | |
| FIRST CORRECTIONAL MEDICAL, | ) | JURY TRIAL REQUESTED |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT GOVERNOR RUTH ANN MINNER'S
REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF HER MOTION TO DISMISS THE COMPLAINT**

In further support of her Motion to Dismiss[1], Defendant Governor Ruth Ann Minner ("Governor Minner") states as follows:

In the Complaint, Plaintiff asserts that Governor Minner was aware of his medical circumstances as a prisoner incarcerated at Delaware Correctional Center ("DCC"). [D.I. 2]. He claims that she gained this knowledge at a hearing in Dover sometime in November or December 2005. Plaintiff does not specify the date of the hearing and does not even allege that Governor Minner was present at the hearing. In the Complaint, Plaintiff states only that his sister was present at the hearing. *Id.* In his response to Governor Minner's Motion, Plaintiff asserts for the first time that his sister spoke on his behalf at the hearing "describing in detail most of the claims made in the Complaint." [D.I. 49].

Even assuming that Plaintiff's new allegations are properly before this Court, he has nevertheless failed to state a claim against Governor Minner.

---

[1] Because Governor Minner answered the Complaint, her Motion to Dismiss should have been entitled Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. However, contrary to Plaintiff's argument, Governor Minner's Motion is not rendered "frivolous" on the basis of the title.

Plaintiff's cause of action is based on his dissatisfaction with medical care he received at DCC. For example, he states that ultrasound testing was ordered in March 2005 by Dr. Ali, who subsequently withdrew the order. Plaintiff filed a medical grievance, which was addressed, although not to Plaintiff's satisfaction. The ultrasound testing was performed later in 2005. [D.I. 2].

Plaintiff further claims that, in February 2005, certain unidentified nurses did not give him Tylenol for his fever. The nurses contacted a doctor, also unidentified, who ordered neither medication nor ice. Another nurse later put a heat pack on Plaintiff's leg. *Id.*

In short, although Plaintiff alleges that the care he received was inadequate, it is clear that he was under the care of medical providers and receiving some care.

However, Plaintiff, in seeking to hold Governor Minner liable, is in effect arguing that, upon hearing of his circumstances from his sister, Governor Minner should have intervened in the care he was receiving. Plaintiff offers no legal support for his novel argument that a Governor can be held liable for medical care rendered by medical providers.

The Third Circuit has rejected attempts to hold non-medical prison officials liable for deliberate indifference to a prisoner's serious medical needs where the prisoner is under the care of a medical provider. This line of authority demonstrates that if a non-medical *prison official* cannot be held liable in the circumstances presented here, then clearly there is no basis for imposing liability on the State's Governor.

In *Durmer v. O'Carroll*, 991 F.2d 64, 66 (3d Cir. 1993), plaintiff filed suit against the prison warden and the commissioner of corrections on the basis that they did not

2

respond to his letters to them complaining about the medical care he was receiving in the prison. The Third Circuit upheld the grant of summary judgment in favor of the warden and the commissioner: "Neither of these defendants, however, is a physician, and neither can be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Id.* at 69. *See also Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004) ("[i]f a prisoner is under the care of medical experts . . ., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."); *Parker v. Burns,* 2004 WL 609333, at *3 (D. Del. March 24, 2004) (attached hereto as Exhibit A) (warden was entitled to judgment where plaintiff did not allege that he was directly involved in the medical care administered; warden could not be held liable for actions of medical provider).

In this case, Governor Minner is not a prison official. She is even more removed from a prisoner's medical care than a prison warden. Plaintiff does not allege that she was directly involved in his medical care. He asserts only that because his sister made complaints about the medical care he was receiving, Governor Minner should have taken some action with respect to that care. Plaintiff's theory of recovery against Governor Minner is without legal support, and Governor Minner is entitled to judgment on all of Plaintiff's claims.

Finally, Plaintiff's argument that Governor Minner is not entitled to Eleventh Amendment Immunity is without merit. This Court has consistently held that a suit against the Governor is essentially a suit against the State of Delaware, which is prohibited by the Eleventh Amendment. *See Lee v. Minner,* 369 F. Supp. 2d 527, 538 (D.

3

Del. 2005); *Gibbs v. Minner,* 2007 WL 2071749, at *3 (D. Del. July 19, 2007) (attached hereto as Exhibit B). Thus, under the Eleventh Amendment, Governor Minner cannot be held liable in her official capacity.

WHEREFORE, Defendant Governor Ruth Ann Minner respectfully requests that this Court dismiss the claims against her with prejudice.

          STATE OF DELAWARE
          DEPARTMENT OF JUSTICE

          /s/ Eileen Kelly
          Eileen Kelly (#2884)
          Deputy Attorney General
          820 N. French Street, 6th Floor
          Wilmington, DE 19801
          eileen.kelly@state.de.us
          (302) 577-8400
          Attorney for Defendant
          Governor Ruth Ann Minner

DATE: September 10, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2007, I electronically filed *Defendant Governor Ruth Ann Minner's Reply Memorandum of Points And Authorities In Support of Her Motion to Dismiss* with the Clerk of Court using CM/ECF, which will send notification to Megan T. Mantzavinos, Esquire and Patrick G. Rock, Esquire. I hereby certify that on September 10, 2007, I have mailed by United States Postal Service, the document to the following non-registered party: William Joseph Webb, Jr.

/s/ Eileen Kelly
Deputy Attorney General
Department of Justice
820 N. French St., 6th Floor
Wilmington, DE 19801
(302) 577-8400
eileen.kelly@state.de.us

# EXHIBIT A

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 609333 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 1

Parker v. Burns
D.Del.,2004.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Michael J. PARKER, Plaintiff,
v.
Roberta BURNS, M.D., Dottie Johns, N.P., Rick Kearney, Warden, Prison Health Systems, Inc. Keith Ivens and Correctional Medical Services, Defendants.
**No. Civ. 00-772-SLR.**

March 24, 2004.

Michael J. Parker, Wilmington, Delaware, Plaintiff, pro se.
Stuart B. Drowos, Deputy Attorney General, State of Delaware, Wilmington, Delaware, for Defendant Kearney.
William L. Doerler, of White and Williams, LLP, Wilmington, Delaware, for Defendants Burns, Jahn, Ivens, and Prison Health Service, Inc.
Kevin J. Connors, of Marshall, Dennehey, Warner, Coleman and Goggin, Wilmington, Delaware, for Defendant Correctional Medical Services, Inc.

MEMORANDUM OPINION
ROBINSON, Chief J.

### I. INTRODUCTION

*1 Plaintiff, a *pro se* plaintiff proceeding *in forma pauperis,* filed the present action on August 23, 2000 pursuant to 42 U.S.C. § 1983, alleging violations of his Eight Amendment right to adequate medical care arising from treatment he received while in the custody of the Delaware Department of Correction at the Sussex Correctional Institution ("SCI"). (D.I.2) Defendants to the present action are Rick Kearney, SCI Warden; Prison Health Services, Inc., Roberta Burns, Dorothy Jahn,[FN1] Keith Ivens (collectively the "PHS Medical defendants"); and Correctional Medical Services ("CMS"). Presently before the court are the motions of defendants to dismiss. (D.I.37, 38, 41) For the reasons stated below, the court will grant the motions as to defendants Jahn, Kearney, PHS and CMS and will deny the motions as to defendants Burns and Ivens.

> FN1. The court notes that plaintiff's complaint misspells defendant Jahn's name as "Johns."

### II. BACKGROUND

On March 21, 2000, plaintiff was involved in a serious automobile accident in which he sustained a fracture of the right acetabulum, a traumatic hemothorax, fracture of his right femoral condyle, rib fractures and a right dorsal wrist laceration. Plaintiff was hospitalized at Christiana Hospital where he was placed in the intensive care unit and required a ventilator to breathe. (D.I.37, ex. A) While hospitalized, plaintiff underwent several surgeries to repair his right femoral condyle, wrist laceration, and fractured acetabulum. Dr. Eric Johnson performed the reconstructive surgery on plaintiff acetabulum. Plaintiff also received psychiatric services for suicidal ideation and substance abuse.

Plaintiff's dismissal instructions prescribed a regular diet, light activities provided that he conduct no weight bearing on his right lower extremity and ambulation with a walker. He was instructed to follow-up with Drs. Fulda, Johnson and Zabel as well as a rational oncologist. Plaintiff was given home physical therapy and fragment injections, as well as prescriptions for Oxycontin and Neurontin. (*Id.*) Plaintiff also asserts that Dr. Johnson ordered certain follow-up work including plastic reconstructive surgery on April 12, 2000 and physical therapy to begin on April 19, 2000. (D.I. 2 at 4) On April 5, 2000, plaintiff was discharged to the custody of the police.[FN2]

> FN2. Between April 5, 2000 and August 11, 2000, plaintiff was held as a detainee after which he became an inmate. Plaintiff has, since the filing of the present action,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d       Page 2
Not Reported in F.Supp.2d, 2004 WL 609333 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

been released from state custody. (D.I.44)

Plaintiff alleges that defendant Burns denied plaintiff permission to attend his scheduled follow-up visits with outside medical professionals.[FN3] (*Id.*) Plaintiff also states that he was denied access to physical therapy and that the substitute medications that he was given, ibuprofen and acetaminophen with codeine, were inadequate to treat his pain. (*Id.*)

> FN3. From the pleadings and the memoranda it is unclear as to the exact position defendant Burns had during the relevant time period. The court infers, however, that Burns was either the chief medical officer or in a similar position of authority to control plaintiff's medical care.

Plaintiff was treated by defendant Jahn, a nurse practitioner, who stated to plaintiff that his condition was due to poor circulation. In May 2000, plaintiff was seen by defendant Ivens to have sutures removed. Plaintiff contends that he informed defendant Ivens of the "negligent level of care by S.C.I. med. dept." (*Id.* at 4)

*2 On June 23, 2000, it was arranged for plaintiff to be seen by Dr. Francis Drury, an outside orthopedic specialist. Dr. Drury indicated that there was complete post-traumatic degeneration of the right hip, complete deterioration of the femoral head, and an irregular posterior acetabulum. (*Id.* at 6) Dr. Drury declined to provide follow-up treatment indicating that plaintiff should be treated by the physician who had initially performed the reconstructive surgery. Dr. Drury indicated that plaintiff's hip had deteriorated and opined that he needed a total hip arthroplasty. (*Id.* at 6-7) Dr. Drury also indicated that the discoloration plaintiff observed in his right leg was the result of poor circulation which contributed to the deterioration of plaintiff's hip.

On July 19, 2000, plaintiff met with defendants Burns and Ivens who informed plaintiff that Dr. Hershey would examine him and perform the necessary hip surgery. Plaintiff refused that treatment indicating that he wanted to see Dr. Johnson. (*Id.* at 5)

Plaintiff presently ambulates with the aid of a walker and reports constant severe pain and cramping. (*Id.*) He contends that, as a result of defendants' conduct, he has become permanently disabled. Plaintiff alleges that defendants acted with " 'reckless disregard' and 'deliberate indifference.' " (*Id.*)

On November 3, 2003, the PHS Medical defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted. (D.I.37) The Medical defendants assert three basis for dismissal: (1) failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e; (2) plaintiff's claims are barred by the applicable statute of limitations due to his failure to pay court filing fees; and (3) failure to state an Eighth Amendment violation of the right to adequate medical care.

Defendant CMS filed its motion to dismiss (D.I.38) on November 17, 2003 asserting two grounds for dismissal: (1) failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e; (2) failure to allege conduct by CMS that gives rise to an Eighth Amendment violation of the right to adequate medical care.

Defendant Kearney filed his motion to dismiss (D.I.41) on December 10, 2003 asserting four grounds for dismissal: (1) failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e; (2) failure to allege conduct by defendant Kearney that gives rise to an Eighth Amendment violation of the right to adequate medical care; (3) sovereign immunity; and (4) qualified immunity.

III. STANDARD OF REVIEW

Because the parties have referred to matters outside the pleadings, defendants' motions to dismiss shall be treated as motions for summary judgment. *See* Fed.R.Civ.P. 12(b)(6). A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 609333 (D.Del.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 3

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.,* 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita,* 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

### IV. DISCUSSION

#### A. Prison Litigation Reform Act

*3 Defendants argue that plaintiff's claims must be dismissed pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C.1997(e). [FN4] (D.I.37, 38, 42) Before filing a civil action, a plaintiff-inmate must exhaust his administrative remedies, even if the ultimate relief sought is not available through the administrative process. *See Booth v. Churner,* 206 F.3d 289, 300 (3d Cir.2000), *cert. granted,* 531 U.S. 956 (2000), *aff'd,* 121 S.Ct. 1819 (2001). *See also Ahmed v. Sromovski,* 103 F.Supp.2d 838, 843 (E.D.Pa.2000) (quoting *Nyhuis v. Reno,* 204 F.3d 65, 73 (3d Cir.2000) (stating that § 1997e(a) "specifically mandates that inmate-plaintiffs exhaust their available administrative remedies"). Prison conditions have been held to include the "environment in which prisoners live, the physical conditions of that environment, and the nature of the services provided therein." *Booth,* 206 F.3d at 295.

> FN4. The PLRA provides, in pertinent part:
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.
> 42 U.S.C. § 1997e(a).

SCI has detailed grievance procedures in place which include a specific procedure for medical grievances. (D.I.37, ex. B) A medical grievance is to be filed first with an inmate grievance chairperson who will log the grievance and then forward the grievance to the medical services contractual staff to attempt an informal resolution. If the grievance is resolved informally, the prisoner's signature is obtained on a form indicating the matter has been resolved. If the grievance is not resolved at the informal resolution level, the next step is a medical grievance committee hearing. Finally, a prisoner may appeal that decision to the Bureau Chief of Prisons. Throughout the grievance process, records are to be kept of the grievance and any resolution thereof.

In the case at bar, an affidavit has been filed attesting that no records exist of a grievance having been filed by plaintiff during the time periods relevant to this action related to his medical treatment. (D.I. 51 at ex. C) Plaintiff alleges that he followed "proper chanels[sic] and procedures, i.e. grievances accompanied by certified letters to the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
Not Reported in F.Supp.2d, 2004 WL 609333 (D.Del.)  
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

(warden) Rick Kearney. To no avail." (D.I. 2 at 4) In plaintiff's memorandum he indicates that he filed grievances which were heard by a "Lt. Brenda Brasure." [FN5] (D.I. 44 at 2) Plaintiff indicates that he was told that she "could not do anything so plaintiff [would be] put on a list to go in front of the grievance committee." (*Id.*) Plaintiff contends that he also sent letters to defendant Kearney and Susan Rickers to follow up on his grievances. (*Id.*) The court concludes that there is a genuine issue of material fact as to whether plaintiff exhausted his administrative remedies.

> FN5. For purposes of this motion, the court will infer that Lt. Brasure was the Inmate Grievance Chairperson to whom plaintiff should have directed his grievance.

### B. Defendant Kearney

Plaintiff has named Warden Kearney as a defendant in the present action but has not alleged any actual conduct by defendant Kearney that might form the basis for an Eighth Amendment violation of plaintiff's right to adequate medical care. Plaintiff has not alleged that defendant Kearney was directly involved with the medical care administered and defendant Kearney may not be held liable for actions of the medical provider, its employees or contractors. *See Monell v. Dept. Of Social Serv.,* 436 U.S. 658, 694 (1979) (holding that *respondeat superior* may not be asserted in a § 1983 action). Moreover, a warden can not be considered deliberately indifferent under Eighth Amendment standards for failing to respond to a prisoner's medical complaints when the prisoner is under the care of a prison doctor. *See Durmer v. O'Carroll,* 991 F.2d 64 (3d Cir.1993). Consequently, the court concludes that plaintiff has failed to state a § 1983 claim against defendant Kearney and the case will be dismissed as to that defendant.[FN6]

> FN6. Having concluded that the complaint should be dismissed as to defendant Kearney on these grounds, it is not necessary for the court to consider whether the various immunity doctrines raised by defendant apply.

### D. Statute of Limitations

*4 The PHS Medical defendants raise a novel issue that plaintiff's complaint has not been properly filed because plaintiff has not complied with the court's August 23, 2000 filing fee assessment. On August 23, 2000 the court granted plaintiff leave to proceed in *forma pauperis* and assessed a $150 filing fee. (D.I.1) The court required that plaintiff pay twenty percent of the average monthly balance in plaintiff's prison trust account pursuant to 28 U.S.C.1915(b). Plaintiff paid his first installment of $4.74 on September 18, 2000. No further payments have been received by the court. Nevertheless, there is no basis in law for defendants' contention that a balance owed on a filing fee can serve as a basis for an opposing party's motion to dismiss.[FN7]

> FN7. The case cited by defendants actually compels the opposite conclusion. *See Redmond v. Gill,* No. 03-1806 (3d Cir. Dec. 11, 2003). In *Redmond,* the Third Circuit overturned the district court's dismissal without prejudice of a *pro se* plaintiff proceeding *in forma pauperis,* holding that district courts may provide a reasonable time for plaintiffs to comply with procedural requirements. *Id.* at 3-4. In the present case, while plaintiff has not made further payments toward the filing fee, there is no evidence that he has had the ability to do so.

### E. Right to Adequate Medical Care

The facts forming the basis for plaintiff's complaint arose between April 5, 2000 and July 19, 2000, during which time plaintiff was a pre-trial detainee. Where a pre-trial detainee alleges a denial of adequate medical care, the court's analysis must proceed under the Fourteenth Amendment rather than the Eighth Amendment. *See Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir.1979). The Third Circuit instructs that the appropriate test remains the *Estelle v. Gamble* deliberate indifference standard. *See id.* (citing

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:07-cv-00031-GMS   Document 51-2   Filed 09/10/2007   Page 6 of 7

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 609333 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 6 of 7

Page 5

*Estelle v. Gamble,* 429 U.S. 97 (1976)).

Under *Estelle,* a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976); *accord White v. Napoleon,* 897 F.2d 103, 109 (3d Cir.1990). A plaintiff must demonstrate: (1) that he had a serious medical need; and (2) that the defendants were aware of this need and were deliberately indifferent to it. *See West v. Keve,* 571 F.2d 158, 161 (3d Cir.1978); *see also Boring v. Kozakiewicz,* 833 F.2d 468, 473 (3d Cir.1987). Either actual intent or recklessness will afford an adequate basis to show deliberate indifference. *See Estelle,* 429 U.S. at 105.

The seriousness of a medical need may be demonstrated by showing that the need is " 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention.' " *Monmouth County Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir.1987) (quoting *Pace v. Fauver,* 479 F.Supp. 456, 458 (D.N.J.1979)). Moreover, "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss, the medical need is considered serious." *Id.*

As to the second requirement, an official's denial of an inmate's reasonable requests for medical treatment constitutes deliberate indifference if such denial subjects the inmate to undue suffering or a threat of tangible residual injury. *Id.* at 346. Deliberate indifference may also be present if necessary medical treatment is delayed for non-medical reasons, or if an official bars access to a physician capable of evaluating a prisoner's need for medical treatment. *Id.* at 347. However, an official's conduct does not constitute deliberate indifference unless it is accompanied by the requisite mental state. Specifically, "the official [must] know ... of and disregard ... an excessive risk to inmate health and safety; the official must be both aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). While a plaintiff must allege that the official was subjectively aware of the requisite risk, he may demonstrate that the official had knowledge of the risk through circumstantial evidence and "a fact finder may conclude that a[n] ... official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842.

*5 The law is clear that mere medical malpractice is insufficient to present a constitutional violation. *See Estelle,* 429 U.S. at 106; *Durmer v. O'Carroll,* 991 F.2d 64, 67 (3d Cir.1993). Prison authorities are given extensive liberty in the treatment of prisoners. *See Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir.1979); *see also White,* 897 F.2d at 110 ("[C]ertainly no claim is stated when a doctor disagrees with the professional judgment of another doctor. There may, for example, be several acceptable ways to treat an illness.").

The essence of plaintiff's claim is that between April 5, 2000 and July 19, 2000, he was denied the medical treatment prescribed by his pre-detention physicians.[FN8] Plaintiff alleges that defendants were in possession of his medical records, were aware of his physicians' instructions, but denied him the right to follow through with those instructions. Plaintiff contends that this denial resulted in unnecessary pain, suffering, and contributed to a deterioration in his physical condition. In *Durmer,* the Third Circuit concluded that a delay in providing medical treatment may give rise to liability under § 1983 where the medical provider has knowledge of the prisoner's condition, the recommendations of pre-incarceration treating physicians and the need for medical attention, but deliberately for non-medical reasons delays access to treatment. 991 F.2d at 68. In the present case, as in *Durmer,* the issue is not simply one of medical negligence but whether defendants were aware of a serious medical need and deliberately ignored that need.[FN9]

   FN8. July 19, 2000 is the latest date for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 609333 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 6

which conduct giving rise to liability might have occurred as it was on that date that plaintiff refused the medical treatment offered by defendants.

FN9. To be clear, plaintiff does not have a constitutionally protected right to be treated by the physician of his choosing. Nor would defendants be liable solely on the basis that plaintiff was prevented from attending the follow-up visits scheduled prior to his incarceration.

With that in mind, however, plaintiff has not alleged facts which support a claim against each of the named defendants. First, plaintiff has alleged no facts which would suggest that defendant Jahn was responsible for denying him access to medical attention. At most, plaintiff has alleged that defendant Jahn was aware of his condition. Jahn was a nurse practitioner that apparently treated plaintiff on at least one occasion. Plaintiff has not alleged that Jahn had discretion to approve his surgical, pharmacological, or physical therapy needs. Consequently, the complaint will be dismissed as to defendant Jahn.

With respect to defendants CMS and PHS, plaintiff has failed to allege any facts which give rise to § 1983 liability. A private corporation is only liable under § 1983 if it has a policy or custom which demonstrates deliberate indifference. *See Miller v. Correctional Medical Services, Inc.*, 802 F.Supp. 1126 (D.Del.1992). Vicarious liability as a result of a contract to provide medical services is not available under § 1983. *See Monell*, 436 U.S. at 692. Plaintiff has not alleged that his injuries were sustained as a result of a policy or custom of either CMS or PHS. Consequently, as to defendants CMS and PHS the complaint will be dismissed.

With respect to defendants Burns and Ivens, plaintiff has alleged sufficient facts to withstand dismissal and summary judgment at this point. Burns and Ivens, as treating physicians, may be liable under § 1983 if they denied plaintiff access to medical treatment and did so with deliberate indifference to a serious medical condition. Consequently, the court finds that there are genuine issues of material fact as to the following: (1) whether defendants had knowledge of plaintiff's condition; (2) whether defendants, with the requisite intent, unreasonably denied plaintiff access to medical treatment; and (3) whether defendants' conduct was the proximate cause of further injury to plaintiff. Therefore, defendants' motion to dismiss as to defendant Burns and Ivens will be denied.

### V. CONCLUSION

*6 For the reasons stated above, the motions of defendants will be granted in part and denied in part. An order consistent with this opinion shall issue.

D.Del.,2004.
Parker v. Burns
Not Reported in F.Supp.2d, 2004 WL 609333 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

Westlaw.

Slip Copy
Slip Copy, 2007 WL 2071749 (D.Del.)
**(Cite as: Slip Copy)**

Page 1

Gibbs v. Minner
D.Del.,2007.
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Arson I. GIBBS, Sr., Plaintiff,
v.
Governor Ruth Ann MINNER, et al., Defendants.
**Civil Action No. 07-342-SLR.**

July 19, 2007.

Arson I. Gibbs, Sr., Smyrna, DE, pro se.

**MEMORANDUM ORDER**
SUE L. ROBINSON, United States Distrcit Judge.
*1 At Wilmington this 17th day of July, 2007, having screened the case pursuant to 28 U.S.C. § 1915;

IT IS ORDERED that the complaint and amended complaint are dismissed without prejudice as frivolous and for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915, plaintiff's motion for leave to file an amended complaint (D.I.9) is denied, and plaintiffs second motion for leave to proceed in forma pauperis without prepayment of filing fee (D.I.10) is denied as moot, for the reasons that follow:

**1. Background.** Plaintiff Arson I. Gibbs, Sr., filed this civil rights action pursuant to 42 U.S.C. § 1983. (D.I.2, 5) He appears pro se and has been granted leave to proceed in forma pauperis. (D.I.4)

**2. Standard of Review.** When a litigant proceeds in forma pauperis, 28 U.S.C. § 1915 provides for dismissal under certain circumstances. Section 1915(e)(2)(B) provides that the court may dismiss a complaint, at any time, if the action is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant immune from such relief. An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).

3. In performing the court's screening function under § 1915(e)(2)(B), the court applies the standard applicable to a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *Fullman v. Pennsylvania Dep't of Corr.,* No. 4:07CV-000079, 2007 WL 257617 (M.D.Pa. Jan. 25, 2007) (citing *Weiss v. Colley,* 230 F.3d 1027, 1029 (7th Cir.2000). The court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff. *Erickson v. Pardus,* --- U.S. ----, 127 S.Ct. 2197, 2200 (2007); *Christopher v. Harbury,* 536 U.S. 403, 406 (2002). A complaint must contain " 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47 (1957)). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965 (citations omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted). Because plaintiff proceeds pro se, his pleading is liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers. *Erickson v. Pardus,* --- U.S. ----, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

*2 **4. Discussion.** Plaintiff filed this suit pursuant to 42 U.S.C. § 1983 against Ruth Ann Minner ("Governor Minner"), the governor of the State of Delaware, members of the Senate, House of Representatives, and legislature of the State of Delaware, each named individually. Plaintiff was indicted in July 2004 in the Superior Court of the State of Delaware, Kent County, in two separate bills of indictment with multiple counts of forgery

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2007 WL 2071749 (D.Del.)
**(Cite as: Slip Copy)**

Page 2

and theft. He was subsequently re-indicted in a consolidated indictment in March 2005. In June 2005, plaintiff filed a petition for writ of habeas corpus which the Superior Court summarily dismissed on the ground that plaintiff was lawfully detained in default of bail. Plaintiff appealed the denial of habeas relief to the Delaware Supreme Court and it affirmed the judgment of the Superior Court. In July 2005, following a bench trial in Superior Court, plaintiff was convicted of five counts of forgery and five counts of theft.

5. Plaintiff alleges Governor Minner and all members of the Delaware Legislature, "under the guise of 10 Del. C. 6902(1) has [sic] ratified, altered or changed by words, phrases or paragraphs, Article I, Sec. 9, Clause 2 of the Constitution of the United States of America." (D.I.2, ¶ 18) Plaintiff alleges defendants did not have the authority to alter or amend Article I. *Id.* at 21. He alleges defendants' conduct amounts to the deliberate indifference to his rights because § 6902(1) "shuts the door and leaves no exit for a speedy release of the plaintiff who is illegally detained and physically restrained of his liberty on felony charges." *Id.* at ¶ 24. Plaintiff further alleges defendants' conduct violated his right to be free from cruel and unusual punishment. *Id.* at 27. Plaintiff seeks declaratory and injunctive relief, and compensatory and punitive damages. Plaintiff does not attack the constitutionality of § 6902 on its face. Rather, he seeks relief from defendants based upon their alleged actions in enacting the statute.

**6. Statute of Limitations.** There is a two year statute of limitations period for § 1983 claims. *See* Del.Code Ann. tit. 10, § 8119; *Johnson v. Cullen,* 925 F.Supp. 244, 248 (D.Del.1996). Section 1983 claims accrue "when plaintiff knows or has reason to know of the injury that forms the basis of his or her cause of action." *Id.* Claims not filed within the two-year statute of limitations period are time-barred and must be dismissed. *See Smith v. State,* Civ. No. 99-440-JJF, 2001 WL 845654, at *2 (D.Del. July 24, 2001). The complaint alleges plaintiff's constitutional rights were violated as a result of defendants' actions in enacting § 6902(1).

The statute as it now reads became effective July 10, 1995. *See* 10 Del. C. § 6902; 70 Laws 1995, ch. 186, § 1, eff. July 10, 1995. Plaintiff filed his habeas corpus petition in the Delaware Superior Court in June 2005, some ten years after the effective date of § 6902(1).

*3 7. The statute of limitations is an affirmative defense that generally must be raised by the defendant, and it is waived if not properly raised. *See Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. LP.,* 435 F.3d 396, 400 n.14 (3d Cir.2006); *Fassett v. Delta Kappa Epsilon,* 807 F.2d 1150, 1167 (3d Cir.1986). "[W]here the statute of limitations defense is obvious from the face of the complaint and no development of the factual record is required to determine whether dismissal is appropriate, sua sponte dismissal under 28 U.S.C. § 1915 is permissible." *Wakefield v. Moore,* No. 06-1687, 2006 WL 3521883, at *1 (3d Cir. Dec. 7, 2006) (citing *Fogle v. Pierson,* 435 F.3d 1252, 1258 (10th Cir.2006)). It is evident from the face of the complaint that plaintiff's § 1983 action is barred by the two year limitations period. Therefore, the complaint is dismissed pursuant to 28 U.S.C. § 1915.

**8. Legislative Immunity.** Dismissal is also appropriate on the basis of legislative immunity. The governor and the legislative branch of government for the State of Delaware are the named defendants. The Eleventh Amendment proscribes any suit against a state, or against a state agency or department or state official where "the state is the real, substantial party in interest," unless the state consents to suit. *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 100-101 (1984); *see MCI Telecom. Corp v. Bell Atlantic of Penn.,* 271 F3d 491, 503 (3d Cir.2001) (states are generally immune from private suits in federal court). The Eleventh Amendment is a "jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.,* 77 F.3d 690, 694 (3d Cir.1996) (citing *Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 98-100 (1984)). Neither the governor or the legislative branch of the State

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of Delaware have waived their Eleventh Amendment immunity and, therefore, they are immune from suit.

9. The Supreme Court has held that individual members of state legislatures are absolutely immune from suit for damages under 42 U.S.C. § 1983 when conducting legitimate legislative activity. *Tenney v. Brandhove,* 341 U.S. 367, 376-79 (1951). Indeed, it is well established that "state and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities." *Bogan v. Scott-Harris,* 523 U.S. 44, 46 (1998) (citations omitted).

10. Immunity extends to state executive branch officials, such as the governor, when they perform a legislative function. *Bogan,* 523 U.S. at 55. "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* at 54. Any activity that is in the sphere of legitimate legislative activity is a legislative act. *Id.* An executive function that is an integral step in the legislative process will usually be considered a legislative act. *Bogan,* 523 U.S. at 55. *See also, Smiley v. Holm,* 285 U.S. 355, 372-373 (1932)(holding that the state legislature cannot enact a law without the participation of the state governor, where the state constitution gives the governor a role in the enactment process). Accordingly, each defendant is absolutely immune from suit for any alleged legislative action taken by them to enact § 6902(1). Based upon the foregoing, plaintiff's claim has no arguable basis in law or in fact. It is frivolous and is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

*4 11. **Motion to Amend.** Plaintiff filed an amended complaint (D .I.5) on June 11, 2005 to add as defendants each and every member of the Delaware legislature. Now before the court is plaintiff's motion to amend his complaint to add as defendants Delaware judges in the Kent County Superior Court and the Delaware Supreme Court. Plaintiff alleges the judges are not entitled to judicial immunity in their executive scope for declaring that "the plaintiff was not entitled to a writ of habeas corpus because the plaintiff was detained on a felony charge." (D.I.9) Plaintiff alleges the proposed defendants knew or should have known their executive actions were contrary to the United States Constitution. *Id.*

12. "After amending once or after an answer has been filed, the plaintiff may amend only with leave of the court or the written consent of the opposing party, but 'leave shall be freely given when justice so requires.' " *Shane v. Fauver,* 213 F.3d 113, 115 (3d Cir.2000) (quoting Fed.R.Civ.P. 15(a)). The Third Circuit has adopted a liberal approach to the amendment of pleadings to ensure that "a particular claim will be decided on the merits rather than on technicalities." *Dole v. Arco Chemical Co.,* 921 F.2d 484, 486-87 (3d Cir.1990) (citations omitted). Amendment, however, is not automatic. *See Dover Steel Co., Inc. v. Hartford Accident and Indem.,* 151 F.R.D. 570, 574 (E.D.Pa.1993). Leave to amend should be granted absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." *Foman v. Davis,* 371 U.S. 178, 182 (1962): *See also Oran v. Stafford,* 226 F.3d 275, 291 (3d Cir.2000). Futility of amendment occurs when the complaint, as amended, does not state a claim upon which relief can be granted. *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir.1997). If the proposed amendment "is frivolous or advances a claim or defense that is legally insufficient on its face, the court may deny leave to amend." *Harrison Beverage Co. v.. Dribeck Importers, Inc.,* 133 F.R.D. 463, 468 (D.N.J.1990).

13. **Judicial Immunity.** Plaintiff's allegations against the four Delaware State court judges fail to state a claim upon which relief may be granted. Plaintiff argues that the four judges are not immune from suit and, therefore, amendment is proper. Judges are absolutely immune from suits for monetary damages and such immunity cannot be overcome by allegations of bad faith or malice.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Mireles v. Waco*, 502 U.S. 9, 11 (1991). Judicial immunity can only be overcome if the judge has acted outside the scope of his judicial capacity or in the "complete absence of all jurisdiction." *Id.* at 11-12. Here, plaintiff alleges, "these four defendants had the power and authority to rule 10 Del. C. subsec. 6902(1) as unconstitutional, but failed to do so." (D.I.9, ¶ 11) The proposed amendment does not allege any of the four judges acted outside the scope of their judicial capacity, or in the absence of their jurisdiction. *Mireles*, 502 U.S. at 11. They are immune from suit under 42 U.S.C. § 1983. The proposed amendment advances a claim that is frivolous and legally insufficient on its face. Therefore, the court will deny plaintiffs motion for leave to file an amended complaint. (D.I.9)

**\*5** 14. Plaintiff recently filed a motion for leave to proceed in forma pauperis without prepayment of filing fee. (D.I.10) This case will be dismissed as frivolous, barred by the applicable limitations period, and by reason of defendants' immunity. Therefore, the court will deny the motion as moot.

15. **Conclusion.** Based upon the foregoing analysis, the complaint is dismissed without prejudice for failure to state a claim, as frivolous, and by reason of defendants' immunity pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A(b)(1). Amendment of the complaint would be futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir.2002); *Borelli v. City of Reading*, 532 F.2d 950, 951-52 (3d Cir.1976). Plaintiff's motion to amend complaint (D.I.9) is denied. Plaintiff's motion for leave to proceed in forma pauperis without prepayment of filing fee (D.I.10) is denied as moot. Plaintiff is not required to pay any previously assessed fees or the $350.00 filing fee. The clerk of the court is directed to send a copy of this order to the appropriate prison business office.

D.Del.,2007.
Gibbs v. Minner
Slip Copy, 2007 WL 2071749 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.