IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM JOSEPH WEBB, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C. A. No. 07-31-GMS |
| ) | |
| FIRST CORRECTIONAL MEDICAL, ) | JURY TRIAL REQUESTED |
| et al., ) | |
| ) | |
| Defendants. ) | |

**DEFENDANT STAN TAYLOR'S OPPOSITION TO
PLAINTIFF'S APPLICATION FOR INJUNCTIVE RELIEF**

Defendant Stan Taylor, by and through undersigned counsel, hereby opposes Plaintiff's Application for Injunctive Relief. (D.I.71). In support of his position, Defendant Taylor states the following:

1. On or about January 10, 2008, Plaintiff William J. Webb, Jr. ("Plaintiff"), an inmate incarcerated at the Delaware Correctional Center in Smyrna, Delaware ("DCC") filed a handwritten document in U.S. District Court entitled "Official Notice." D.I.71. This memorandum, addressed to four administrators at the Delaware Department of Correction (DOC), alleges that Plaintiff is "being denied medical care by C.M.S. in various ways." *Id.* Nowhere in Plaintiff's memo, or the attached certificate of service, does he direct his concerns to medical personnel who could provide him with treatment.

2. From January 2007 to the present, Plaintiff has filed only two (2) medical grievances; both were written on November 14, 2007. *See attached Exhibit 1, Affidavit of Captain Michael McCreanor.* After filing his application for injunctive relief with the Court, Plaintiff wrote a letter, dated January 15, 2008, to counsel for Defendant Taylor,

stating that he "would like to have a conference or possibly a nice dinner at an Italian restaurant to rediscuss a settlement offer." *Exhibit 2*.

3.   On February 11, 2008, the U.S. District Court ordered the remaining Defendants in this action to respond to Plaintiff's application for injunctive relief. D.I.77. On February 12, 2008, Plaintiff composed a motion to compel against Defendant Correctional Medical Services (CMS). D.I.80. In it, Plaintiff made no mention to CMS of his pending medical conditions or need for immediate treatment in his filing. Instead, his focus was future monetary sanctions against CMS.

4.   Federal Rule of Civil Procedure Rule 65(a) sets out the standard to bring into play injunctive relief. "[T]he grant of injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 800 (3d Cir.1989) (*quoting Frank's GMC Truck CTR. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988)). The decision to grant or deny a motion for injunctive relief rests with the sound discretion of the district judge. *Eli Lilly & Co. v. Premo Pharmaceutical Laboratories, Inc*., 630 F.2d 120, 136 (3d Cir. 1978).

5.   The purpose of injunctive relief is to address a presently existing threat. *Continental Group, Inc. v. Amoco Chem. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (quoting *Holiday Inns of Am., Inc. v. B & B Corp*., 409 F.2d 614, 618 (3d Cir. 1969). Therefore, the party seeking an injunction must demonstrate that the threatened injury is immediate.

6.   In order to grant injunctive relief, the court must be sufficiently satisfied that the party seeking relief has demonstrated: (1) a reasonable probability of success on the merits; (2) immediate and irreparable injury will suffer if relief is denied; (3) a grant

of relief will not result in greater harm to the other party; and (4) the public interest will be served by the grant of injunctive relief. *Clear Ocean Action v. York*, 57 F.3d 328, 331 (3d Cir. 1995); *Maldonado v. Houston*, 157 F.3d 179, 184 (3d Cir. 1998). "All four preliminary injunction factors should favor preliminary relief before injunction will issue." *S & R Corp. v. Jiffy Lube Inter., Inc.*, 968 F.2d 371, 374 (3d Cir. 1992).

7. In the instant petition, Plaintiff must demonstrate that the Department of Correction was deliberately indifferent to his serious medical needs. *Wilson v. Seiter*, 111 S.Ct. 2321, 2324 (1991); *Estelle v. Gamble*, 429 U.S. 97 (1976). Deliberate indifference is shown if the Department of Correction staff should have known of a sufficiently serious danger to the Plaintiff, yet failed to respond reasonably to that danger. *Young v. Quinlan*, 960 F.2d 351, 360-61, n. 22 (3d Cir. 1992). Merely demonstrating negligence or inadvertent failure to provide adequate medical care is insufficient to prove this claim. *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189 (1989).

8. Here, in his "Official Notice" Plaintiff advises the Department of Correction staff that he must receive: (1) test results from his September 2007 gastrologist visit; (2) a liver biopsy once he is "declared healthy enough to have it performed"; and (3) testing for "MRSA," or Methicillin-resistant Staphylococcus aureus, a condition of which Plaintiff has never been diagnosed, despite repeated medical examinations.

9. The Plaintiff's first two demands, for gastrologist test results and a liver biopsy, fail to rise to the level required for injunctive relief. These two demands are not a "serious medical need" as contemplated by *Estelle v. Gamble* and its progeny. A serious

medical need is demonstrated "where denial or delay causes an inmate to suffer a life-long handicap or permanent loss." *McCray v. Williams*, 357 F.Supp.2d 774, 780 (D.Del.2005), *citing Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.1987). Failure to receive a medical examination (a liver biopsy) or the result of a medical examination (the tests performed by Plaintiff's gastrologist) does not qualify.

10.    Plaintiff's third allegation, that MRSA will enter his bloodstream, is Plaintiff's self-diagnosis which is not grounded in fact. As Plaintiff concedes in his "Official Notice," he was examined by CMS medical personnel in December 12, 2007. At that time, the CMS medical personnel examined him and concluded that he did not have MRSA. Plaintiff neglects to mention in D.I.71 that at his November 2007 medical appointment, he was examined by the medical department, and was prescribed Bacitracin, a topical antibiotic, for the same issue complained of in December 2007. In November 2007, he also made the wild allegation that he had "a clear case of MRSA." *See Grievance #146498, attached in Exhibit 1.* At the time he filed this grievance, Plaintiff wanted to be treated by an outside medical provider with "an MRI and a Lumbar tap to see if I have bacterial meningitis." Plaintiff has not produced a shred of evidence that he suffers from any of these conditions. The December 12, 2007 appointment, which took place after Grievance #146498 was filed, yielded no significant health risks of the Plaintiff upon examination.

11.    Tellingly, Plaintiff has made similar exaggerations in the past. In 2005, Plaintiff alleged he had swelling problems in his legs. *See Exhibit 3, Plaintiff's Grievance #14406.* Plaintiff was then scheduled to see a medical provider. He refused to

sign off on this accommodation, stating "I have life threatening issues. My symptoms are the same as a person suffering poor blood circulation in the legs." Plaintiff wanted "Immediate tests done on my legs to see if I have poor blood circulation in my legs, an ultrasound if necessary." *Id.* The grievance board concluded that Plaintiff was "diagnosed with chronic cellulitis and his treatment is being followed on the chronic care case load." *Id.* Plaintiff's ultrasound request was denied by the medical director. For Plaintiff to allege in his "Official Notice" that he has been denied medical treatment for his skin conditions is disingenuous.

12. In 2006, Plaintiff attempted to dictate his own medical treatment when he filed a grievance against Dr. Niaz. *Exhibit 4, Grievance #60046*. Plaintiff alleged that "Dr. Niaz tried to start me on Interferon shots without following the proper medical procedures, such as a biopsy of my liver." Part of his requested remedy was to be released from the prison. *Id.* After a review and hearing on Plaintiff's grievance held on September 26, 2006, it was determined that Plaintiff was receiving proper treatment for his medical problems. *Id.*

13. In 2005, 2006, and in the present instance, Plaintiff has been housed in Building 17, which is part of the Secured Housing Unit (SHU) at DCC. Plaintiff made previous attempts to orchestrate his transfer from the SHU. In his October 2007 Motion to Compel (D.I.56), Plaintiff asked the Court to have him released from custody because he "is most likely now suffering brain damage as a result in which testing needs to be done immediately to see the damage and a treatment plan to minimize the damage." *Id.* This request was made following a visit to Kent General Hospital in September 2007. In D.I.56, Plaintiff made no mention of a liver biopsy, gastrologist test results, or MRSA.

14.  Moreover, Plaintiff's complaints about medical care also appear to be tied to his attempt to settle this case for monetary gain.  In Plaintiff's letter to counsel for CMS dated December 12, 2007 (the same date of his medical appointment with CMS for his skin affliction), rather than asking for help for his skin condition, he states that "I will give you a chance to answer before I raise the price on default."  In his motion to compel dated February 12, 2008 (D.I.80), Plaintiff asks for "a sanction in the amount of $6,000" and "attorney's fees in the amount of $2,000 for the amount of time invested in preparing this motion."  Plaintiff here is *pro se*.

15.  Because the medical records submitted by the Defendant demonstrates that Plaintiff has received and continues to receive treatment for his chronic skin conditions, it is clear that there is neither an immediate need nor a likelihood of success on the merits of a denial of medical treatment claim.

16.  To succeed in his application for injunctive relief, Plaintiff must also demonstrate the second required factor, that the threatened injury is immediate and clearly shown. *Acierno v. New Castle County*, 40 F.3d 645 (3d Cir. 1994). Plaintiff has failed to make any showing that he faces immediate and irreparable harm as a result of inaction by the Department of Correction staff.  His requested relief, stated on page 4 of D.I.71, calls for future appointments and tests, rather than shelter from an immediate threat.  Plaintiff has failed to produce any evidence that he has been denied his access to medical care or that he has suffered adversely as a result of medical treatment.  To the contrary, Plaintiff has received medical treatment at DCC by Defendant CMS.  Thus, he cannot show the likelihood of success on the merits that his constitutional rights were violated.

17. Nor has the Plaintiff met his burden for the third factor of injunctive relief, showing how granting the requested relief will not create a greater harm to the Defendants. The actions requested by the Plaintiff are frivolous. Subjecting the Department of Correction and Defendant CMS to requests for unnecessary treatment would be a grave harm.

18. Lastly, the Plaintiff has not demonstrated how granting his requested relief is in the public interest. Prison regulations are related to a legitimate penological interest, and thus favor the public interest. Plaintiff's requested relief favors him alone. A prisoner does not have the right to dictate his own medical treatment because he disagrees with his medical provider's diagnosis. Clearly, Plaintiff is aware of the medical grievance procedure, and should be admonished to use it.

WHEREFORE, based upon the reasons set forth above, Plaintiff has not demonstrated an adequate showing to warrant the extraordinary relief that he is requesting. Accordingly, Defendant respectfully requests that the Court deny Plaintiff's application for injunctive relief. Defendant also asks that the Court assess counsel fees against Plaintiff for the defending against the instant request for injunctive relief. Plaintiff's frivolous use of the Court system in this instance is a serious misuse of the judicial system.

    **STATE OF DELAWARE**
    **DEPARTMENT OF JUSTICE**

    /s/ Catherine Damavandi
    Catherine Damavandi, I.D. No. 3823
    Deputy Attorney General
    820 North French Street, 6th Floor
    Wilmington, Delaware 19801
    (302) 577-8400

                                        Catherine.Damavandi@state.de.us
                                        Attorney for Defendant Stan Taylor

DATE: February 20, 2008

Case 1:07-cv-00031-GMS   Document 83   Filed 02/20/2008   Page 8 of 10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **WILLIAM JOSEPH WEBB, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | C. A. No. 07-31-GMS |
| ) | |
| **FIRST CORRECTIONAL MEDICAL,** ) | **JURY TRIAL REQUESTED** |
| **et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

AND NOW, this ____ day of _____, 2008, upon consideration of Plaintiff's Application for Injunctive Relief and the Response of Defendant Stanley Taylor, IT IS HEREBY ORDERED that Plaintiff's Application for Injunctive Relief is DENIED.

_____
United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM JOSEPH WEBB, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C. A. No. 07-31-GMS |
| ) | |
| FIRST CORRECTIONAL MEDICAL, ) | JURY TRIAL REQUESTED |
| et al., ) | |
| ) | |
| Defendants. ) | |

CERTIFICATE OF SERVICE

I hereby certify that on February 20, 2008 I electronically filed *Defendants' Opposition to Plaintiff's Application for Injunctive Relief* with the Clerk of Court using CM/ECF, which will send notification to the following:

    Ryan M. Ernst, Esq.    rernst@mooclaw.com
    Eileen M. Ford, Esq.    eford@mooclaw.com
    Megan Trocki Mantzavinos, Esq.    mmantzavinos@mooclaw.com

I further certify that on February 20, 2008, I caused the within document to be mailed to the following non-registered participant by United States Postal Service:

    William J. Webb, Jr., SBI#256056
    Delaware Correctional Center
    1181 Paddock Road
    Smyrna, DE  19977

    /s/ Catherine Damavandi
    Deputy Attorney General, ID #3823
    Department of Justice
    820 N. French Street, 6th Floor
    Wilmington, DE 19801
    (302) 577-8400
    Catherine.Damavandi@state.de.us
    Attorney for Defendant Stan Taylor